Thank you, Your Honor. I do know that the Court has many issues before it today, but I'd like to focus on two. That's the Magwood issue and its application to this case, and then the withdrawal of the guilty plea from the 1994 resentencing hearing. And if I could put this in a very short factual context right now. In 1981, there was a change of plea in the State District Court. In 1983, there was a motion to withdraw the guilty plea. That came after sentencing, Your Honor. And then in 1991, this Court granted relief to Mr. Creech, and he was remanded back down to the State District Court for resentencing. In 1994, prior to that resentencing, Mr. Creech again moved to withdraw his guilty plea. And then in 1995, the State District Court imposed the death sentence. Based on those very short recitation of facts, I think that the comparison between the procedural posture that Mr. Creech is in and the procedural posture that Mr. Magwood was in is very — is identical. The two cases present an intervening judgment. And under the Magwood decision, that's the important factor for the Court to determine whether or not 2244B applies and whether there's a successive petition in place. Because of the intervening judgment here, there is not a successive petition. Now, I understand that there's a distinction in the types of claims that were raised between Mr. Magwood and the claims raised by Mr. Creech in this case. And the distinction comes from the — whether the phase was a penalty phase or guilt phase. I think the analysis, though, remains the same between the two. If you look at how the Court analyzed the claims, they rejected the Eleventh Circuit's argument of a claim-by-claim analysis, and they also rejected the State of Alabama's argument that this is done on a claim-by-claim analysis and instead looked at the application. If the application is challenging a new judgment, then it is no longer successive. Now, as I understand Magwood, the Court left open the question — assuming Magwood says, listen, it's a new judgment, it's a new judgment, anything challenging the new judgment is not a second or successive — left open the question that we have here, which is, there was a new judgment that went only to sentencing, whether it's a second or successive as to guilt phase. Assuming that Magwood is read broadly so that guilt phase claims are also open, assuming for purposes of argument, what's your argument as to why he should prevail? Why he should prevail on the guilt phase claims themselves, Your Honor, or why the guilt phase — Magwood applies to the guilt phase claims? I'm assuming you win on that argument as to the application of Magwood. So just get straight to the — To the guilt phase claims. Yes, Your Honor. The withdrawal of the plea claim, yeah. Those are a limited set of claims that are before the Court. There are four ineffective assistance of counsel claims that come off of that 1981 guilt phase — 1981 sentencing. And then there are three that come off of the guilt phase that are standalone or substantive claims for relief. I think for the IAC claim, 99C is the withdrawal of counsel because of the conflict of interest. That substantive claim is claim 11. Those two have not been ruled on in the 1986 federal petition. So those are new claims that the federal courts have not ruled on the merits of. The remaining have been ruled on before in the 1986 petition. But I think the distinction here, because of the intervening judgment and going back to argue these anew, the distinction is during the 1986 petition, there was a conflicted counsel who had the case. That would be a reason for the district court to open the fact-finding and have full briefing. I acknowledge that we did brief on the merits in 2008. But at that time, the Magwood had not come out. We were focused upon those issues that had the most potential for relief for Mr. Ferkreich. And the briefing below was very limited. Additionally, the district court below found only — did not find on the merits, but found only that this was a successive petition. I think that we could go back, because the prejudice prong under the IAC claims for the guilt phase is very different than the prejudice prong that you might be analyzing under, say, the sentencing mitigation phase. For the guilt phase claim, what the court would be looking at is would the petitioner have persisted in his right to proceed under a not guilty plea. If you look at the bifurcated step in which a capital sentencing occurs, while there's the penalty phase and the guilt phase, yes, Mr. Ferkreich pled guilty. But the next step, the penalty phase, he certainly challenged. And the withdrawal of the guilty plea at that point would have benefited Mr. Ferkreich, because when you look at the colloquy that happens in 1981, there's a conversation between the court that sets up whether or not he's guilty, but then the court turns over Mr. Ferkreich for examination to the prosecuting attorney who inquires about the intent factor. That's the aggravator. That's the sentencing phase. So clearly there was prejudice that Mr. Ferkreich can show by failing to withdraw the guilty plea under the IAC prong and then under the other three. Connect up the dots for me. I've read the colloquy back in the original plea. As I gather what happened is that Mr. Kreech writes a letter directly to Judge Newhouse saying, I want to plead. Judge Newhouse sets up the sentence on fairly short notice. I'm taking this largely from Justice Bistlein's dissent. His lawyer, Kreech's lawyer, advises him not to plead guilty, asked to be excused because Kreech is not following his advice. Judge Newhouse doesn't really allow any further time for Kreech's lawyer to try and persuade him otherwise and also doesn't allow the withdrawal. So I understand this all goes very quickly, and there's some admissions in there as part of the guilty plea that are used later against him. I've got all that. Help me understand your claims about ineffective assistance of counsel and withdrawal that we would get to if we adopt your reading of Magwood. The withdrawal, the ineffective assistance, Your Honor, comes because at the time of the hearing, Mr. Keeney, the trial counsel, is now a witness to how the change of plea hearing comes about and would be a witness to testify about the limited notice to counsel, the amount of time that counsel had or did not have to speak with Mr. Kreech, and the discussion of the types of implications Mr. Kreech would have from the guilty plea colloquy. It's more than just annoying, intelligent, involuntary at that point. Because of the included discussion about the aggravators, I think that would become part of the withdrawal as counsel ineffective assistance claim under 99C. I don't yet see the ineffective assistance of counsel. I mean, the narrative that I've just gone over, it sounds as though Mr. Keeney is behaving properly. He's trying to get more time. He's trying to talk his client out of it. When he can't do it, he says, listen, I can't be the lawyer anymore. Where's the ineffective? The ineffectiveness comes, Your Honor, in advance of the actual change of plea as well as during the change of plea. One of the problems with having Mr. Keeney there at the change of plea and then later trying to withdraw it is Mr. Keeney is the witness that can tell the court whether or not he had sufficient time, even in advance of the hearing, to discuss with Mr. Creech the reasonable options, the investigation that's going on in the case, the implications of pleading guilty, which include not only the guilt phase, the admission or the confession, so to speak, but also the attempt for the prosecutor to use any statements in aggravation. That's the phase that Mr. Creech continues. Is your contention that Mr. Keeney was ineffective in 1981? Yes, Your Honor. In 1986, or 85, whenever the other relevant period was. Your contention is that Keeney was ineffective in 1981. And continues through when he attempts to withdraw the guilty plea in May of 1983. Okay. I'm still having trouble figuring out, you know, precisely what Keeney did wrong that means that Creech was left without counsel for Sixth Amendment purposes. So what did Keeney do wrong that he should have done in 1981 that renders his efforts ineffective? It sounds like he was being as conscientious as he could. The client was pleading against his advice. I'm not sure what's ineffective there. There's only so much he can do to throw his body in front of this train. Understandably, Your Honor, if you look at only that change of plea hearing, that very short motion hearing, Mr. Keeney attempts to take steps to stop the change of plea. Granted, the client has the right to change his plea even against advice of counsel. But before that, in advance of the change of plea, what Mr. Keeney states is, I didn't spend the time with Mr. Creech. I did not explain to him the consequences of the plea. I didn't explain to him his potential mitigation or defenses to the aggravators. Did Keeney know that there was going to be a change of plea? No, Your Honor. Then why is he ineffective for having failed to warn his client of consequences of something he didn't know was going to happen? Well, certainly in the communication with the client that leads up to the case, you are explaining each step. It's no surprise that Mr. Creech would potentially change his plea. Why is that not a surprise? One, the elements of the crime were if you commit a murder against a prisoner or if you were under sentence of death, that's a first-degree crime. He had made a confession to the ---- Keeney is ineffective because he failed to anticipate that his client would change his plea. Not that he failed to anticipate, but failed to take into account that potential alternative and explain to Mr. Creech why there would be consequences from taking that. Do you have any analogous case in which we've held that a lawyer has a duty to do that and is ineffective if he doesn't? If he doesn't keep the client informed about the progress of the case? What case have you got that's closest to this that Keeney should have been aware of the case and should have been able to say, okay, I failed to do this and this is a derogation, I'm going to self-report to the bar because I was ineffective? I don't have that case, Your Honor. I think what you would go back to is the Strickland standard of whether or not Mr. Keeney was communicating with the client and keeping the client informed of the progress and the potential consequences of the case. I don't think there's a particular ---- I don't have a particular case that I can cite to you at this point. Just to remind me, was this claim made the first time on appeal up here? The 99C, the claim for withdrawal of counsel as conflict, and claim 11, the constitutionality of the plea, because of the conflict, were not made in 1986. Those are new claims. New claims, but they could have been made at the time. They could have been made at the time, assuming ---- well, Mr. Keeney represented Mr. Creech in the 1986 petition, so I believe that would be difficult to do. But you're attributing to Mr. Keeney now is what came out in his latest habeas proceeding. I'm sorry, Your Honor. Would you prefer to ---- He said I didn't tell him this, that and so on. Where is that information? That comes out of the State post-conviction action that comes in 1994 to 1995. But that was in hand when it was before us the first time around? No, Your Honor. In 1991, when this Court ruled on it, the ---- Suppose the first time around. That's correct, Your Honor. What was before the Idaho Supreme Court at the time when Justice Bistlein dissents saying that the procedure under which the plea was taken effectively deprived Mr. Creech of counsel? What was the majority thinking it was deciding with respect to the claim as to which Justice Bistlein was dissenting? Do you follow me? Not very well, Your Honor, but ---- Well, Justice Bistlein is dissenting at that point, saying that the way that plea taking went down deprived him of effective assistance of counsel. He wasn't criticizing counsel so much as he was criticizing Judge Newhouse. But there was a Sixth Amendment claim there that Justice Bistlein would have granted. What was the majority thinking it was deciding with respect to the Sixth Amendment? In that case, what the majority had before it, what the Idaho Supreme Court had before it, were the mechanics of the change of plea. The fact that Mr. Creech does write the letter to Judge Newhouse and that the plea is held quite quickly, within a day or two. And then the actual transcript of the change of plea itself, where Mr. Kinney is asking for a continuance in order to speak with Mr. Creech. Mr. Creech is then questioned by the court and the prosecuting attorney whether he wants a continuance or not. Mr. Kinney's attempt to withdraw, attempt to implicate the Feretta right, that's what the Idaho Supreme Court had. Let me follow on from Judge Bybee's questions. I'm still having trouble getting my hands around ineffectiveness of Mr. Kinney at the time of that original plea. As I understand it, Creech sends a letter directly to the judge. He doesn't send it past Kinney. That's correct, Your Honor. Saying, I want a plea. And the first thing Kinney finds out about this is when the judge says, well, let's have a hearing. That's correct. So that comes out of the bluest to him. Now, as you say, any sensible defense lawyer will know that a client in this circumstance might be tempted at some point to plead guilty. I got that part. But as far as I can tell from what I've so far seen, we don't have Mr. Creech saying to Mr. Kinney, I want a plea and I'm going to send a letter to the judge. No, he just says, he just up and sends the letter. So I'm having trouble seeing what Kinney is supposed to do differently from what he did. I think, Your Honor, has hit upon the point of the relationship between the two, between Mr. Kinney and Mr. Creech. The fact that the client is writing directly to the court and not communicating with counsel underscores the lack of communication between the two. I'm not going to bring all my experience into this from different cases. I've had a number of cases, typically death cases, where the man on death row writes us constantly. It just happens. That's true, Your Honor. I, too, have been in that position. But when they're writing and the counsel, I'm still, you know, this is troublesome because all of this is matters that happened in 1981. There was a whole proceeding in the change of plea at the time of the hearing. He would have, he could have stood up, Mr. Kinney could have stood up and made sure that the court advised him in the colloquy if he didn't. These are pretty dramatic charges you're making to say that even if he was caught unawares, then he was flat-footed in the courtroom and the judge was derelict in the plea colloquy. And here we are now in 2012 trying to go back after resentencing when this case was up before this court in 1991. And I'm having a little trouble understanding why we're delving so meticulously into failures that happened and we're hardly unavailable to present to the court the first time around. I think, Your Honor, the Magwood case changes the landscape because the conviction happens in 1981. It doesn't change the landscape about raising an ineffective assistance of counsel in the first proceeding. Are you saying Mr. Kinney was conflicted on handling the appeal through the Idaho court? Did he handle it through the Ninth Circuit? He handled it to the Ninth Circuit, Your Honor. Mr. Garner handled it on appeal to this court. That's what I thought. So he was ineffective for not raising the ineffective assistance claim against Mr. Kinney? I don't think we need to go through that much of an analysis, Your Honor. I think because Magwood applies here, the intervening judgment makes this a non-successive petition. And the analysis that the court does under Magwood to reach to claims that should have been brought before applies here. The only distinction between Magwood and Mr. Creech is the phase. And I don't think the analysis that occurs under Magwood changes that outcome. I'm not so sure about it, but I'll proceed. And so far I've been willing to entertain this as on the assumption that Magwood allows you to reopen guilt-phase propositions, even though I think that question was left open by the Supreme Court. But even on that assumption, and even assuming in that sense we're really outside of the strictures of AEDPA with respect to second or successive petitions, we've got a problem of so-called the old-fashioned problem, abuse of the writ. Why is it not abuse of the writ to bring that up now for the first time? Your Honor, I think the abuse of the writ, the doctrine of abuse of the writ has been modified and taken into 2244B. That's the abuse of the writ that the majority talks about in Magwood. 2244B1 would be our particular situation, a claim that was brought before or for the four that were brought. And the majority talks about the modification of res judicata, or abuse of the writ, in the context of the statute. Okay. Well, this is all, in a sense, this is part of the uncertified claim that we asked for additional briefing on. I think we've probably spent enough time on it. Would you care to spend the rest of your time on the claims that were certified? Your Honor, I thought that these two issues were the ones that the Court could best benefit from argument. I have no particular points to raise on the other issues, unless the Court has questions. Well, just to go back to the issue, and I think this is one that runs through any of your claims dealing with ineffective assistance of counsel. What's the prejudice here? There's no question as to what took place in these events. Mr. Creech's record is a very difficult one. The Supreme Court pointed out Justice O'Connor's opinion. What's the prejudice? I think the prejudice, when you look at the ineffective assistance on the sentencing claims, the ones that were certified to the Court, you look at the development of classic mitigation that occurs in the State post-conviction arena, child sexual abuse, and the mental illness that runs through the family. That claim, combined with the judicial bias claim, puts a framework in front of the Court of a judge unwilling or uninterested in the mitigation that was presented, unless it addressed three particular factors, and then the failure of trial counsel to develop the mitigation, and then the presentation of the additional information in post-conviction on those two points. That's for the ineffective assistance at sentencing. As to the Magwood claims, the prejudice would be would Mr. Creech have persisted in pleading not guilty. As to the prong of the penalty, I think that's clear. He would have persisted and would have challenged the death penalty at that point. Sure. My question is, is what prejudice is there? Given his record, he actually has a very, very poor claim for any kind of mitigation of his sentence here. I mean, he just has an abysmal record. I know you don't choose your clients, but if you could have, this is not one you would like to be presenting this kind of an argument. I mean, this is a difficult argument, Your Honor. I agree. You have a very, very difficult client, and it makes your argument very, very difficult to figure out under what circumstances any of the evidence that you worked very diligently to muster about the child sex abuse and his the mental illness in his family and whether Judge Newhouse was biased or not. You still got a very, very difficult argument that there's anybody, any judge in the And I think, Your Honor, under the reasonable probability standard, the development of those additional mitigating factors is where the change could come. Understanding and recognizing those two that were presented in the State post-conviction in the 1994-95 time frame changes the perspective. Well, as to the withdrawal of the plea, Creech indicates quite early on that he was he wants to withdraw his guilty plea. That is to say, as soon as the first sentence of death comes down, he wants to withdraw. So the period during which he has an unchallenged plea of guilty is actually a fairly short period. So let me come back to, again, your argument as to ineffective assistance of counsel. Your ineffective assistance of counsel is that he somehow allowed the guilty plea to be entered?  Correct, Your Honor. That Mr. Keeney, and leading up to that plea, the communication period is important as well. So leading up to the plea. Now, was that claim ever made, the ineffective assistance of counsel in allowing that guilty plea to be entered? Has that ever been made in any of these proceedings, that it was ineffective assistance of counsel to allow that plea to be entered? That was the Claim 99-C-D-I-N-K. The Boykin violation, the failing to communicate with client, and the failing to research the issue. And when was that claim first made? Those were made in the 1986 Federal petition. The ineffective assistance to withdraw was made in the 1999 petition. And those were then resolved against him, those ineffective assistance of counsel claims, with respect to the entry of the plea, correct? The ones made in 1986 were resolved against him. The 1999 petition for the withdrawal for a conflict was resolved as a successive petition, not on the merits. As to those that were not resolved for successive petitions, it sounds to me as though we've got law of the case. Your Honor, if the law of the case applies, then if the Court thinks the law of the case applies, then I think we should be allowed supplemental briefing on that issue, because Magwood changes the dynamics on successive petition and law of the case, that that issue has not been briefed before this Court or the Court below, because it was handled as a successive petition. Okay. Why don't we hear from the State, and you've got a little time. Thank you, Your Honor.  May it please the Court. The Supreme Court's 1993 decision in Arvey v. Creech underscores the enormous amount that Ralph Keeney had to and John Adams had to undertake at the resentencing. Discussing the facts underlying this case, as was alluded to by Judge Bybee, the Court explained they could, quote, not be more chilling, end quote. Quote, Creech has admitted to killing or participating in the killing of at least 26 people, end quote. Eleven bodies have been recovered in seven States. Well, he's not on trial for the prior murders. So why don't we focus on the issues that counsel has raised? I certainly intend to discuss the Magwood issues, but this goes to the ineffective assistance of counsel claims at the resentencing that were briefed, and I believe that they also have some application to the judicial bias claim. As to the Magwood claims specifically, those are the guilt phase claims, counsel has stated that there are some new claims from the prior proceedings before this Court, and yet in the brief on page 77, the opening brief, I quote, Creech's guilt is that he was denied effective assistance of counsel because his attorney failed to provide him with certain information prior to the making of his guilty plea, end quote. Now, as I listen to counsel's argument, it seems to me that there are some new claims raised in the 1986 habeas application. It seems to me that these are the same claims that were raised in the 1985 proceedings. And while I understand counsel's argument as far as Magwood, I think, Judge Fletcher, you've noted that the Supreme Court specifically left open the question of whether that applies to guilt phase claims. But assuming that they do, not conceding, but assuming that, this Court has already addressed the guilt phase claims that were raised even in this petition, according to counsel's opening brief and the decision from this Court in 1991. Now, I didn't read Magwood as eliminating law of the case doctrine. I read Magwood as discussing successive petitions. Those are two, from my perspective at least, entirely different arguments. And I know that counsel has stated that remand is necessary for the district court to address these guilt phase claims, but why? Because this Court has already decided under de novo review prior to the AE, prior to AEDPA, that those claims failed. So the district court would be required to conclude that they are noncognizable, that they fail. And if you add AEDPA on top of that, they fail all the more, because there's not an unreasonable application of Boyden, there's not an unreasonable application of Strickland, there's not an unreasonable application of any United States Supreme Court case as it applies to that guilt phase claim. As to the argument that defense counsel should have anticipated Creech's guilty plea, I'm not familiar with a case directly on point. But there's a plethora of cases that say that defense counsel are not required to be clairvoyant in anticipating changes in the law. Now, if you're not required to anticipate changes in the law, how in the world can you anticipate whether your client's going to plead guilty? Oh, no, that's quite a different question. That would be very fact-specific. Very often, maybe you should have anticipated. Whether that's true in this case, that's a different question. But for you to say a lawyer can't be charged with anticipating changes of the law and therefore he can't be charged with anticipating changes of his client's mind, no, no, I won't go there with you. And it may be a poor analogy, Your Honor, but particularly in this case, quite frankly, I don't know why Keeney didn't anticipate a guilty plea. As counsel alluded to, Creech had confessed. All of the elements were there. He killed a prisoner while himself a prisoner at the auto department of corrections. I don't see any reason that Creech would not plead guilty, and that's – and I realize in capital cases particularly, defendants plead not guilty all the time, forcing the State to meet their burden of beyond a reasonable doubt. But keep in mind that Creech had been convicted of first-degree murder in a capital case in Idaho, in fact, prior to this. He knew the elements. He knew what was happening. I just don't see that counsel was ineffective in any fashion when it came to that guilty plea. You know, this is water under the bridge, and there's no going back and redoing what happened. I do wish that Judge Newhouse had been more deliberate, because a lot of these problems would never be – I mean, we spent 30 years with these problems, essentially resulting from the rapidity of Judge Newhouse's response to that letter. And I can appreciate that, Your Honor. I'm sure there are many times that appellate courts wish trial courts would be more deliberate. I have a sense that relying upon some of the language from the Supreme Court's decision, Judge Newhouse had some things in mind when it came time for the sentencing. As to the guilty plea, Judge Newhouse, I suspect, recognized that the mandate from this court was to conduct a resentencing. Not to rehash water that had gone under the bridge as far as the guilty plea, particularly based upon this court's decision affirming all of the issues associated with the guilty plea. I just don't see that there's a problem with that. I would, if I could, just very briefly like to address the judicial bias claim, because it's our position that that claim has morphed immensely since the petition was filed. I'd like to point out just a couple of things. On June 25th, 2011, Creech filed his opening brief before this court and raised the claims in the petition and or the facts, I'll use counsel's words, and the facts raised during the oral argument before Judge Windmill. On September 7th, 2011, however, this court filed Cevik v. Hardison. Cevik also involved Judge Newhouse in a judicial bias claim. It was not an AEDPA case. It was a de novo, reviewed de novo, and similar allegations were made against Judge Newhouse, although if you compare the comments that Judge Newhouse made in Cevik as opposed to Creech's case, Ceviks were more troubling than even in this case. And this court concluded that those comments and what happened in Cevik, quote, does not involve the type of extreme facts establishing a violation of his due process rights to an impartial judge, end quote. October 27th of last year, Creech filed his reply brief, and all of a sudden we have a claim involving, quote, direct pecuniary interest in giving Creech a death sentence that's based upon Judge Newhouse's reelection. And what I would submit to this Court is that the claim morphed because of Cevik. A direct pecuniary interest claim has never been raised. And I understand counsel's argument that you can have different facts, but that's a different claim. It's akin to an IAC claim where you raise failure to present sexual abuse as a claim. And then in your reply brief before the district court, and then in your reply brief before this court, you present an IAC claim for failing to present a mental health expert. Those are entirely different claims. Or a Brady claim, which is similar to what happened in the Rhodes case, where the State allegedly fails to disclose a police report. That's the claim raised before the district court. And then in a reply brief before this court, there's a claim withholding of an exculpatory witness. I would submit to the Court that that's what happened in this case, and there simply is. No judicial bias claim before this Court, as to the pecuniary interest claim. I think the Court has a pretty good handle on the IAC claims at the resentencing. And its interaction, their interaction with Strickland and Penholster. Unless the Court has questions, any other questions, I would simply ask the Court to affirm the district court below. Thank you. Thank you. Response? No. Technically, this is rebuttal. But I want to make sure you get a chance to say whatever you need to say. Thank you, Your Honor. Could I get a clarification? I refresh my recollection by going back to our first opinion. I had understood coming in that the claims you were making today about ineffective assistance had been raised. I understood you to tell me this in response to my question, that they were new claims, that they hadn't been raised before. Two claims had not been raised before, Your Honor. The 99C, which was the conflict of interest, ineffective assistance for conflict of interest at the 1981 guilty plea, and Claim 11, which is the substantive claim of conflict of interest at the guilty plea. Those were not raised. The ineffective assistance that we spent so much time on were specifically addressed in our opinion. And we're reading Magwood as saying because there was a resentencing because of penalty phase errors, now we write on a ñ you write on a clean slate here. Yes, Your Honor. I am reading Magwood to say that any claims that were raised before could be raised again, and specifically in this case for the ineffective assistance claims, those were three that were raised before. I'm sorry. I'm just writing this down, so you have to go slowly. Yes, Your Honor. There were three claims raised in the 1986 petition that were addressed before, and that's the violation of Boykin, failing to communicate with client, and failing to research and argue constitutionality of the plea. That's in our present petition. We've called that ñ I'm sorry. I've got violation of Boykin, failing to communicate with client, and then ñ And failing to research and argue the constitutionality of the plea. Those claims are denominated in the current petition as 99D, I, and K. 99C, the withdrawal because of a conflict of counsel, that was not raised in the 1986 petition, as was claim 11. That was not raised in the 1986 petition as well. So give me again so I can write this down. Describe claim 99C to me again. That's the withdrawal because counsel has a conflict of interest. So withdrawal of the guilty plea because of counsel's conflict. Now, state that claim in a way that I can understand it. You've just alluded to it, but state it again. Give me, like, complete sentences in terms of what the nature of that claim is. So, Your Honor, counsel was ineffective at the time of the withdrawal in 1981 because he had a conflict of interest with Mr. Creech. At the time of the withdrawal of what? At the time of the ñ Withdrawal of the guilty plea. Withdrawal of the guilty plea, yes, Your Honor, in 1981. Well, he didn't withdraw a guilty plea. He pled guilty in 1981. I'm ñ my mistake, Your Honor, at the change of plea. My mistake. So 99C is IAC in allowing him to plead? Is that what you ñ that was it? At the change of plea in 1981. What's the conflict? The conflict was that Mr. ñ Mr. Keeney becomes the witness to testify as to how the plea ñ change of plea comes about, the ñ the communication with Mr. Creech in advance of the change of plea, and ñ But that conflict doesn't ñ doesn't ripen until much later, right? It doesn't ripen until really until you have post-conviction proceedings that he might be called as a witness. He can't be called as a witness in 1981. Okay. What happens in 1981 that suggests that Mr. Keeney would have been a witness? In 1981, Your Honor, Mr. Keeney could have become a witness to testify in front of ñ in front of Judge Newhouse about the level of communication that he had with Mr. Creech and whether or not Mr. Creech fully understood the implications of his plea. Certainly, he could have been an ñ attempted to be a witness at that time. Well, you know, this is ñ I mean, this raises some really interesting questions about ñ about what lawyers do, but I ñ it just seems to me in the cases that I've seen that the lawyers are called all the time not to divulge confidential communications with their client, but to argue in front of the judge to say, my client doesn't understand this, Your Honor, and to make those kinds of arguments. But you could ñ we could just turn lawyers into ñ into witnesses all the time if that ñ if that point prevails. But in this case, Your Honor, what the court was focusing on is, did Mr. Creech understand what he was doing in changing his plea on a first-degree murder case? And there are procedures, counsel, for that, to ñ for counsel to stand up in court and say, I'm not sure my client understands the consequences. The judge has an obligation to make sure that ñ that he understood. Our opinion in 1991 goes through that discussion, finds that there was an effort to do it. Now you're saying, okay, the new theory, the new spin on all of this is that Mr. Creech has decided to change his plea against my advice. I have been incompetent in representing him. That's the standard you'd like this case to create, part of the decision in this case, interpreting the scope of review. I think the scope of review under Magwood does include the guilt phase claims. Well, let's just ñ you know, I'll accept that to a point. I really have doubts that Magwood suggested that you get a full second bite at the apple and ignore completely the fact that a panel of judges on this court, back to the original proceeding, have reviewed the very claim you're making and now you're putting a spin on it. I mean, talk about waste of judicial resources and frustrating the purposes of appellate and ñ you know, review and finality of judgments. I mean, what you're suggesting by the argument in this case ñ and I appreciate you're an advocate for your client. I'm not faulting you for that. But the practical implications of what you're saying would put defense counsel automatically in a conflict position every time that their client decided not to accept the advice and put the attorney at pain of being ineffective, labeled ineffective, as Judge Fletcher said, having to self-report to the bar if the rulings in the hearing go contrary to his client's interests in his view. Now he has to say, okay, Judge, you have now accepted a plea that I'm opposed to, and I want to turn this right now into a hearing on my competency. And I throw myself on the mercy of the court because this is what I've done and failed to do. Your Honor, I think there is a distinction between whether there's a knowing, to Mr. Creech the consequences of the plea. It can be more than an unconstitutional plea. In this case, what we saw was not only entry to a plea, but also admission to the aggravators. That admission to the aggravators comes about because of Mr. Keeney's ineffective assistance in failing to explain to Mr. Creech the full consequences of changing his plea. In the course of changing his plea, he made statements that affected the aggravators? Correct, Your Honor. And you're really expecting counsel to sit down and go through that whole scenario on a hypothetical, to sit with his counsel, I mean with his client, and say, okay, now we're proceeding on an imperfect self-defense, and you have a defense. But let me tell you, if you decide to plead guilty, not that you've told me you're going to, but here's how it's all going to play out. And if you say anything in the course of the proceedings, whatever you say that may affect the aggravators will be held against you. That's the kind of legal standard you're saying we can tease out of the scenario that's before us on this set of facts. Your Honor, I don't think you have to tease out the scenario because the scenario that's presented to every counsel is the duty to explain the elements of the crime. Well, I understand that. I'm talking about taking it to the facts of this case. And in the facts of this case, Your Honor, the distinction between the elements and the aggravators were very clear. It seems to me that Mr. Keeney would have been required and should have explained to Mr. Creech the proceedings as they are going along. If you don't have that contact or communication, and you wait until a change of plea hearing where the client is going forward without this understanding, I think that the conflict has already developed. Counsel, Creech had already been through a death penalty case. He was experienced. He had four different convictions at this point for murder, for first-degree murder. One of those was a death sentence, later reversed. Keeney's not some neophyte who's getting into the court system for the first time and has got to be advised what the procedures are. This is an experienced guy. Mr. Creech did have experience with the criminal justice system before, but the difference between those crimes and this one is that the elements were extremely different. It was simply did you kill while you were under sentence of death or another prisoner. The aggravators are the prejudice here, Your Honor. The aggravators being which elements? The intent to kill, the subsection C, I believe it is, under the byhood of statute that was in effect at the time. Those really weren't all that difficult to establish, Counsel. So let me assume first the first prong of Strickland for purposes of my question. Let's assume that there was ineffectiveness on the part of Mr. Keeney at this time when plea is entered. The deficient performance, Your Honor? Yeah. All right. I guess this is Judge Bybee's point or Judge Bybee's question. The second prong, of course, is prejudice. And you're saying the prejudice is he admits all these things that turn into aggravators. I'm not convinced, given what's in the record, quite aside from what he then says in terms of how this happened, that I can see prejudice. I think, Your Honor ---- That's even assuming I can get to the question. We've got several layers before we can even get to that question. But once I get there, I'm having trouble seeing prejudice. I think, Your Honor, the distinction, though, is trying to analyze the prejudice as though it were NIEC on sentencing. If you step back to the point of a withdrawal of a guilty plea, the prejudice that must be shown is would Mr. Creech have persisted in his not-guilty plea? In a bifurcated system where we have the guilt and the penalty phase, we know that Mr. Creech was persisting in not admitting to the aggravators because he goes through the sentencing phase. That's the distinction. It's not will the result be different in the sense will he get a different sentence, not at the withdrawal of the guilty plea. Well, but if the question is, is the result going to be different in the sense of is he going to be convicted of this murder if he doesn't plead, I also have trouble finding prejudice. I mean, this is an open-and-shut case of homicide. But, Your Honor, it's would he persist in his plea, not would the final result be different. If at a withdrawal of the guilty plea, Mr. Creech would have persisted, notwithstanding ineffective assistance, that's the prejudice. Okay. I have one point that I'd like to raise to the Court's attention based on that, and that's the fact that these claims have already been addressed and so the court below would be required to dismiss. I think the Magwood Court deals with that at footnote 15 on page 2802, where they indicate that if claims are re-raised, that the district courts can handle those in whatever manner they see expeditiously required. Okay. Thank you, Your Honor. Thank you. Thank both sides for their arguments. Creech v. Hardison now submitted for decision, and we are in adjournment for the day. Thank you.
judges: Fletcher, Fisher, Bybee